[No. 10712.  Department One.  April 15, 1913.]

PETE CHOLOKOVITCH, *Respondent*, v. PORCUPINE GOLD
MINING COMPANY, *Appellant*.[1]

WORK AND LABOR—CONTRACT—TERM—CERTAINTY.  A contract of
employment to work in a mine at P. in Alaska during the season of
1911 is not void for indefiniteness or uncertainty as to the time of
service, where it appears that there was a well defined mining sea-
son at that place, although the season was in a measure dependent
upon contingent events.

PLEADING—VARIANCE.  It is not a material variance, within Rem.
& Bal. Code, § 299, that the complaint alleged an oral contract of
employment to work in a mine in Alaska entered into April 24th,
and the proof showed an oral contract prior to that time, and a letter
sent to the employee April 24th directing him when to commence
work.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered May 25, 1912, upon findings
in favor of the plaintiff, in an action on contract, tried to the
court.  Affirmed.

*H. R. Clise* and *C. K. Poe*, for appellant.

*Jackson Silbaugh*, for respondent.

PARKER, J.—This is an action to recover damages which
the plaintiff claims resulted to him from a breach of contract
of employment by which he was to work for the defendant
at its mine in Alaska during the season of 1911.  A trial be-
fore the court without a jury resulted in findings and judg-
ment in favor of the plaintiff, from which the defendant has
appealed.

Respondent is a resident of Seattle.  Appellant is a cor-
poration engaged in working a mine at Porcupine, in Alaska.
F. C. Hunter is the president of appellant, and George
Charlton is a clerk in charge of the office of appellant at Por-
cupine.  In the winter or early spring of 1911, Hunter was in

[1]Reported in 131 Pac. 459.

Seattle, where he had a conversation with respondent result-
ing in an agreement between them that respondent should go
to Porcupine and work for the appellant as a pick and shovel
man in its mine during the season of 1911, his wages to be
three dollars per day and board, and that he would be notified
by letter from Porcupine when to go there to commence work,
the beginning of the season depending upon weather condi-
tions in the spring. Soon thereafter Hunter went to Porcu-
pine, and on April 24, 1911, caused the following letter to
be sent to respondent:

> "Porcupine, Alaska, April 24, 1911.
> "Mr. Pete Cholokovitch, Seattle, Wash.
> "Dear Sir:—Mr. Hunter directs us to write you that you
> may leave Seattle about May 15th, and that will get you
> here in time to begin work at the mines.     Yours truly,
> "Porcupine Gold Mining Company,
> "By George A. Charlton."

Respondent, in response to this letter, went from Seattle to
Porcupine, paying his own way, and thereafter offered his
services in compliance with the agreement had with Hunter
while in Seattle. Respondent was then refused employment by
appellant. He thereupon returned to Seattle, and during the
period covered by the mining season of 1911 at Porcupine,
made reasonable efforts to obtain employment, but was un-
able to earn during that period near as much as he would have
earned had appellants employed him at Porcupine in com-
pliance with the agreement. He was awarded judgment
against the appellant for the amount he would have earned had
he worked for it at Porcupine during the season of 1911, less
the amount of his earnings at Seattle during that period.

There is a well recognized mining season at Porcupine dur-
ing the spring, summer, and fall months, its length being
controlled by the coming of spring and winter. This is the
only uncertainty as to its length. When the conversation oc-
curred between Hunter and respondent in Seattle, it is evi-
dent that appellant then intended to and thereafter did carry
on its mining operations at Porcupine for the entire season

of 1911, so that the amount respondent would have earned could be determined with reasonable certainty. While the evidence is in conflict, especially upon the question of employment for the whole of the season, we think the foregoing is a fair summary of the facts which the trial court was warranted in believing from the evidence, and which it evidently did believe in arriving at its decision.

The principal contention of counsel for appellant is, in substance, that the contract of employment was too indefinite and uncertain as to time to bind appellant for the entire mining season of 1911, or to bind appellant in any event except from day to day, the agreed wages of respondent being by the day. Counsel invoke the general rule of law that, in order to bind an employer for a particular term of employment, the contract of employment must be reasonably certain as to the length of such term. While this is the general rule, we do not think it follows that the length of the term of employment may not be made sufficiently certain by contract by reference to events which are sure to occur in the future, contingent only as to the time of their occurrence. It seems to us that the duration of the prospective employment, under this agreement, was even more certain than that involved in the case of *Prescott v. Puget Sound Bridge & Dredging Co.*, 31 Wash. 177, 71 Pac. 772; *Id.*, 40 Wash. 354, 82 Pac. 606, looking alone to the terms of the respective contracts. In that case the contract was, in substance, that the plaintiff should be employed "for the time the work undertaken by the defendant at Manila should last;" and it was there held that the contract was not in law so uncertain as to exclude testimony as to the duration of the work, notwithstanding, as was said in the dissenting opinion in that case in 40 Wash. 357, "it might continue for months or for years." In this case we have less uncertainty than that, since the term of employment in no event could last beyond the mining season of 1911, and this we think would go a long way towards removing the objections urged in the dissenting opinion in that case. The principle upon which that case was

decided in favor of the plaintiff is stated in the opinion in 31 Wash. 177, 71 Pac. 772, as follows:

"The contract was one which, if it did not give the appellant the right to enter at once into the service of the respondent, gave him the right to enter therein within a reasonable time after its execution; and was broken, within either view, when the respondent wrongfully, and without cause, refused to permit the appellant to enter into the service at all. It was not, therefore, so indefinite and uncertain as to the time of the commencement of the service as to render it void. Nor was it so indefinite and uncertain as to its duration as to render it void. While its duration was uncertain in the sense that it was not shown how long the work undertaken by the respondent at Manila would last, yet it was not a contract of employment for an indefinite period in the sense that either party could terminate it at will. It was a contract to serve on the one part and to employ on the other, obligatory upon each until the happening of a particular event, and until that event happened neither party could terminate the contract without committing a breach thereof."

We conclude that appellant cannot escape liability because the duration of the employment was dependent upon the length of the mining season of 1911, even though the length of that period was in a measure dependent upon contingent events.

Some contention is made by counsel for appellant rested upon the theory of variance between the proof and allegations of the amended complaint. The amended complaint alleges that the contract was oral and entered into on or about the 24th day of April, 1911. This it will be noticed, is the date of the letter sent from Alaska to respondent in Seattle, and at that time Hunter was in Alaska. The conversation which constituted the making of the contract necessarily occurred sometime prior. It seems clear to us that this is not such a variance as worked to the prejudice of appellant upon the trial of the case; neither do we find in the record of the trial any claim of prejudice by reason of the proof of the conversation which was claimed to constitute the contract, occur-

ring sometime before the date alleged in the complaint. It seems to us that it would be a clear violation of the spirit of Rem. & Bal. Code, § 299, relating to variance, to recognize appellant's contention upon this ground as well taken.

The judgment is affirmed.

CROW, C. J., MOUNT, GOSE, and CHADWICK, JJ., concur.